# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANN CARONE, | : |
| Plaintiff, | : |
| - v - | : 3:06cv01094(DJS) |
| MARYANNE MASCOLO, CATHY A. GOODRICH, JAMES FREUND, and THOMAS PETRUNY, | : |
| Defendants. | : |

## MEMORANDUM OF DECISION

The plaintiff, Ann Carone ("Carone"), brings the present action alleging, inter alia, intentional infliction of emotional distress under Connecticut common law. Defendants Maryanne Mascolo, Cathy A. Goodrich, James Freund, and Thomas Petruny (collectively, "the defendants") have moved the court **(dkt. # 12)** to dismiss Carone's fourth claim for relief,[1] which alleges that defendants' extreme and outrageous conduct caused plaintiff to suffer severe emotional distress. The motion to dismiss **(dkt. # 12)** is **GRANTED in part and DENIED WITHOUT PREJUDICE in part**.

## I. STATEMENT OF FACTS

The facts are drawn primarily from Carone's Complaint and are accepted as true for the purposes of ruling on the pending motion to dismiss. Carone is a tenured teacher at Seymour High School. The defendants are supervisory officials of the Seymour Public Schools. Specifically, MaryAnne Mascolo ("Mascolo") is the Assistant Superintendent of

---

[1]The court observes that Carone has not divided her Complaint into separate counts. Instead, the legal causes of action are listed in paragraphs 24 through 29 of the Complaint. (See dkt. # 1.)

1

Schools; James Freund ("Freund") is an Assistant Principal at Seymour High School; Cathy A. Goodrich ("Goodrich") is an Assistant Principal at Seymour High School; and Thomas Petruny ("Petruny") is the Superintendent of Schools.

The events giving rise to the instant litigation commenced during the fall term of 2005, when Carone was assigned to teach a class called, "Introduction to Business" ("the IB Class"). Thereafter, on or about September 15, 2005, Carone complained to one or more of the defendants that the students in her IB Class had been deprived of textbooks and workbooks and that the assigned curriculum could not be carried on without the above-mentioned books. In addition, Carone notified Freund that, if the textbooks were not provided to the students by the following week, she would inform their parents of that fact. During this time period, Carone also informed her IB students that they would have a "study hall" until the textbooks arrived.

Thereafter, on or about September 16, 2005, Assistant Superintendent of Schools Mascolo summoned Carone to a disciplinary meeting and issued to Carone a written reprimand "for unprofessional conduct and poor judgment" in having made the above-mentioned statements. (See dkt. # 1, Compl. ¶ 12.) Carone contends that the reprimand was issued in retaliation for her exercise of her free speech rights. She also asserts that Mascolo accused her of being an "incompetent teacher." (Id.) Carone responded to the written reprimand on or about September 28, 2005. At that time, she sent a letter to Mascolo, wherein she asserted that "the defendants were responsible for the denial of an appropriate education to students in her said class." (Id. ¶ 13.) Carone also sent this letter to the Connecticut Education Association and to the President of the Seymour Education

Association.

On or about December 1, 2005, Carone went to Freund's office to speak to him about an incident where a female student made an obscene and vulgar statement to her in the presence of other students. Carone discussed this incident with Freund at the entrance of his office suite. Subsequent to this discussion, on December 13 and December 14, 2005, Goodrich imposed punishment, a verbal and written reprimand, upon Carone for having complained about the said misconduct at the entrance of Freund's office suite. Carone asserts that Goodrich issued the reprimand in retaliation for her exercise of her free speech rights.

Thereafter, the defendants "began soliciting and encouraging both oral and written complaints against the plaintiff from her students" in further retaliation for plaintiff's exercise of her free speech rights. (Id. ¶ 17.) Indeed, Carone asserts that defendants embarked upon a campaign of retaliation. For instance, on or about December 23, 2005, Freund ordered Carone to a disciplinary meeting and on January 11, 2006, he issued a written reprimand. Then, on "February 6, 2006, defendant Petruny issued [to] the plaintiff a written reprimand and suspended her from work for two days, without pay, upon the basis of utterly groundless complaints . . . ." (Id. ¶ 19.) In addition, on March 9, 2006, Mascolo ordered Carone to attend two out-of-town sensitivity training sessions. According to Carone,

> [t]he conduct which the defendants falsely and disingenuously claimed was their basis for the disciplinary actions imposed upon the plaintiff . . . was identical to or less inappropriate than conduct which the defendants knew had been engaged in at approximately the same time by another Seymour High School teacher, Dan Danuj, for which he had not been disciplined in any way, and by yet another Seymour High School teacher, Paul O'Connor, for which his only discipline was being directed to apologize. The disparity in treatment was malicious and intended to punish the exercise of a constitutional right.

(Id. ¶ 21.) She further asserts that

> [t]he ongoing an escalating retaliation which the defendants continued to

3

impose upon the plaintiff for her aforesaid speech became cumulatively so severe that the plaintiff's physician ordered her to go out on sick leave for fear of grave physical consequences due to the increasing stress to which the defendants were subjecting the plaintiff.

(Id. ¶ 22.) Yet, while Carone was at home on sick leave, "Defendant Mascolo immediately commenced a pattern of unreasonable and highly stressful demands directed against the plaintiff at her home and, in addition, began a pattern of harassing the plaintiff's physician with repeated demands that he complete lengthy questionnaires and provide other materials." (Id. ¶ 23.)

Lastly, Carone asserts, "[i]n June of 2006, in still further retaliation against the plaintiff for her exercise of protected speech, defendant Mascolo terminated the plaintiff's sick pay and summer pay although the plaintiff has an absolute statutory and contractual right to such pay. As a result, the plaintiff now has no income. Defendant Mascolo's said action was outrageously arbitrary." (Id. ¶ 24.)

## II. DISCUSSION

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), defendants have moved to dismiss each of the intentional infliction of emotional distress claims Carone asserts against Petruny, Goodrich, Freund, and Mascolo. The court shall consider Carone's allegations against each defendant seriatim.

### A. Standard

When considering a 12(b)(6) motion to dismiss, the a court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). Dismissal is warranted only if, under any set of facts that the plaintiff could prove consistent with the allegations, it is clear that no relief can be granted. See Hishon v. King & Spaulding,

467 U.S. 69, 73 (1984); Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998). "[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Desiano v. Warner-Lambert Co., 326 F.3d 339, 347 (2d Cir.2003) (internal quotation marks omitted). In its review of a motion to dismiss, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993).

B. Intentional Infliction of Emotional Distress

Intentional infliction of emotional distress is a tort under Connecticut common law. The Connecticut Supreme Court has stated that, in order to recover damages on a claim of intentional infliction of emotional distress, the plaintiff must show:

> (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress and (4) that the emotional distress sustained by the plaintiff was severe.

Peytan v. Ellis, 200 Conn. 243, 253 (1986), superseded by statute on other grounds as recognized in Chadha v. Charlotte Hungerford Hosp., 272 Conn. 776 (2005). "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. . . . Only where reasonable minds disagree does it become an issue for the jury." Appleton v. Bd. of Educ. of Town of Stonington, 254 Conn. 205, 210 (2000).

With respect to the second element, "'[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a

5

civilized community.'" Id. at 210-11 (citing 1 Restatement (Second) of Torts § 46, comment (d) (1965)). Indeed, the conduct must be of a "nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." Ancona v. Manafort Bros., Inc., 56 Conn. App. 701, 746 (2000). Further, when the defendant is an employer, the court looks to the employer's conduct, not the motive behind the conduct, to determine if it was extreme or outrageous. Miner v. Town of Cheshire, 126 F. Supp. 2d 184, 195 (D. Conn. 2000). "An employer's adverse yet routine employment action, even if improperly motivated, does not constitute extreme and outrageous behavior when the employer does not conduct that action in an egregious and oppressive manner." Id.

Courts in Connecticut have been reluctant to allow a claim for intentional infliction of emotional distress. See, e.g., Dollard v. Bd. of Educ., 63 Conn. App. 550, 554 (2001) (plaintiff's claim of concerted plan to force plaintiff to resign or become so distraught as to have reason to terminate her does not rise to an intentional infliction of emotional distress claim); Appleton, 254 Conn. at 21 (finding allegations that school officials made derogatory comments, in front of other employees, concerning plaintiff's work performance and his ability to read, contacted plaintiff's daughter to recommend that plaintiff take some time off because he was acting erratically, and arranged to have him escorted by police off of school property were insufficiently extreme or outrageous to state a cause of action); Emanuele v. Boccaccio & Susanin, No. CV 90-0379367S, 1992 WL 79823 at *2 (Conn. Super.Ct. Apr. 10, 1992) (holding conduct not extreme and outrageous where at-will employee alleged her employer made false accusations regarding her work performance, and used coercion, threats and intimidation to force her to sign a document against her will, all for the purpose of depriving her of benefits and compensation); Rock v. Mott Metallurgical Corp., No.

6

CV990492215S, 2001 WL 100307 at *5-8 (Conn. Super.Ct. Jan. 10, 2001) (granting defendant's motion for summary judgment where plaintiff alleged that she was ordered to lift and carry heavy objects beyond her ability, was required to work without being supplied the necessary resources, was transferred to a work station without a chair or desk, was called names, and was falsely accused of not finishing her work, because in totality the acts were "less than 'extreme' and 'outrageous' in nature").

Similarly, the federal courts in this District, applying Connecticut law, have interpreted the qualification of extreme and outrageous conduct strictly. See, e.g., Armstead v. Stop & Shop Cos., No. 3:01 CV 1489(JBA), 2003 WL 1343245 at *4-5 (D. Conn. Mar. 17, 2003) (dismissing intentional infliction of emotional distress claim, holding that "claims of employer misconduct in the form of intentional discrimination or retaliation, including discharge, which challenge motive or intent, are dismissed unless the manifesting conduct is extreme and outrageous."); White v. Martin, 23 F. Supp. 2d 203, 208 (D. Conn. 1998) (general allegations of discrimination and harassment "fall short of misconduct which exceeds 'all bounds usually tolerated by a decent society'".); Thomas v. St. Francis Hosp. & Med. Ctr., 990 F. Supp. 81, 92 (D. Conn. 1998) (verbal warnings, suspension, and termination may have resulted in hurt feelings, but were insufficient to support claim of intentional infliction of emotional distress); Johnson v. Cheseborough-Pond's USA Co., 918 F. Supp. 543, 551 (D. Conn. 1996) (negative performance reviews, sudden termination, and being physically escorted from premises are not actionable as intentional infliction of emotional distress).

### 1. Petruny

With respect to Petruny, Carone argues that on "February 6, 2006, defendant Petruny issued the plaintiff a written reprimand and suspended her from work for two days, without

pay, upon the basis of utterly groundless complaints . . . ." (Dkt. # 1, Compl. ¶ 19.) In addition, she asserts that, in retaliation for her exercise of her free speech rights, all of the defendants "began soliciting and encouraging both oral and written complaints against the plaintiff from her students," (Id. ¶ 17), and that "[t]he ongoing an [sic] escalating retaliation which the defendants continued to impose upon the plaintiff for her aforesaid speech became cumulatively so severe that the plaintiff's physician ordered her to go out on sick leave . . . ." (Id. ¶ 22.) Lastly, Carone alleges that "[t]he conduct which the defendants falsely and disingenuously claimed was their basis for the disciplinary actions imposed upon the plaintiff . . . ." (Id. ¶ 21.) Here, Carone has failed to state a claim for intentional infliction of emotional distress against Petruny because, even if true, there is nothing in Carone's complaint to suggest that Petruny disciplined plaintiff in a humiliating, extreme or outrageous manner. Moreover, Carone's allegations that Petruny acted intentionally and in retaliation for her exercise of her free speech rights are not enough, as a matter of Connecticut law, to maintain an intention infliction of emotional distress claim. Indeed it is the employer's conduct, and not the motive or intent, that must be extreme and outrageous. See Thomas, 990 F. Supp. at 92 (verbal warnings, suspension, and termination may have resulted in hurt feelings, but were insufficient to support claim of intentional infliction of emotional distress); Miner, 126 F. Supp.2d at 195 ("An employer's adverse yet routine employment action, even if improperly motivated, does not constitute extreme and outrageous behavior when the employer does not conduct that action in an egregious and oppressive manner."); Armstead, 2003 WL 1343245 at *4-5 (dismissing intentional infliction of emotional distress claim, holding that "claims of employer misconduct in the form of intentional discrimination or retaliation, including discharge, which challenge motive or intent, are dismissed unless the manifesting conduct is

extreme and outrageous."). Since Petruny's conduct was not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community," defendants' motion to dismiss Carone's intentional infliction of emotional distress claim against Petruny is **GRANTED**.

### 2. Goodrich

Carone asserts that, Goodrich, in retaliation for plaintiff's protected speech, issued a verbal and written reprimand to Carone because she complained about a student's misconduct at the entrance of Freund's office suite. She further alleges that, in retaliation for her exercise of her free speech rights, all of the defendants "began soliciting and encouraging both oral and written complaints against the plaintiff from her students," (Dkt. # 1, Compl. ¶ 17), and that "[t]he ongoing an [sic] escalating retaliation which the defendants continued to impose upon the plaintiff for her aforesaid speech became cumulatively so severe that the plaintiff's physician ordered her to go out on sick leave . . . ." (Id. ¶ 22.) Lastly, Carone alleges that "[t]he conduct which the defendants falsely and disingenuously claimed was their basis for the disciplinary actions imposed upon the plaintiff . . . was identical to or less inappropriate than conduct which the defendants knew had been engaged in at approximately the same time by [other teachers] . . . ." (Id. ¶ 21.) These allegations cannot sustain a claim for intentional infliction of emotional distress. As previously discussed, the operative issue for the court to evaluate is whether "the employer's conduct, not the motive behind the conduct, is extreme or outrageous." Miner, 126 F. Supp. 2d at 195. Here, again, Carone has failed to state a claim for intentional infliction of emotional distress against Goodrich because there is nothing in Carone's Complaint to suggest that Goodrich disciplined plaintiff in a humiliating, extreme or outrageous manner. Thus, to the extent defendants' move to dismiss Carone's intentional

infliction of emotional distress claim against Goodrich, their motion is **GRANTED**.

### 3. Freund

With respect to Freund, Carone alleges that Freund "ordered the plaintiff to a disciplinary meeting on December 23, 2005, and on January 11, 2006, issued a written reprimand to the plaintiff which had no foundation in fact but was further retaliation for the plaintiff's aforesaid exercise of her free speech rights." (Dkt. # 1, Compl. ¶ 18 .) In addition, she alleges that, in retaliation for her exercise of her free speech rights, all of the defendants "began soliciting and encouraging both oral and written complaints against the plaintiff from her students," (Id. ¶ 17), and that "[t]he ongoing an [sic] escalating retaliation which the defendants continued to impose upon the plaintiff for her aforesaid speech became cumulatively so severe that the plaintiff's physician ordered her to go out on sick leave for fear of grave physical consequences due to the increasing stress to which the defendants were subjecting the plaintiff." (Id. ¶ 22.) Lastly, she alleges that "[t]he conduct which the defendants falsely and disingenuously claimed was their basis for the disciplinary actions imposed upon the plaintiff . . . was identical to or less inappropriate than conduct which the defendants knew had been engaged in at approximately the same time by [other teachers] . . . ." (Id. ¶ 21.) Carone's allegations, even if taken as true, do not support a claim of intentional infliction of emotional distress against Freund. First, it is immaterial that Freund may have acted out of a desire for retribution or retaliation, because motive does not factor into the court's inquiry. Miner, 126 F. 2d at 195. Second, there is nothing to suggest that Freund imposed the adverse employment action in a humiliating, extreme or outrageous manner. See Thomas, 990 F. Supp. at 92 (verbal warnings, suspension, and termination may have resulted in hurt feelings, but were insufficient to support claim of intentional infliction of

emotional distress); Miner, 126 F. Supp. 2d at 195 ("An employer's adverse yet routine employment action, even if improperly motivated, does not constitute extreme and outrageous behavior when the employer does not conduct that action in an egregious and oppressive manner."); Armstead, 2003 WL 1343245 at *4-5 (dismissing intentional infliction of emotional distress claim, holding that "claims of employer misconduct in the form of intentional discrimination or retaliation, including discharge, which challenge motive or intent, are dismissed unless the manifesting conduct is extreme and outrageous."). Accordingly, Carone has failed to state a claim for intentional infliction of emotional distress against Freund. Thus, to the extent defendants' move to dismiss Carone's intentional infliction of emotional distress claim against Freund, their motion is **GRANTED**.

### 4. Mascolo

With respect to defendant Mascolo, the court finds that a reasonable person could conclude that her tactics are intolerable in a civilized community. Carone alleges that (1) Mascolo terminated plaintiff's sick pay and summer pay-despite the fact that she had a statutory and contractual right to such pay, and (2) commenced a pattern of unreasonable and highly stressful demands against the plaintiff while at home on sick leave. The defendants "vigorously dispute the facts alleged in the Complaint." (Dkt. # 13.) In particular, the defendants argue that Carone's allegation that Mascolo terminated her sick pay is simply "not true." (Id.) Although the defendants vigorously dispute these allegations, the court must, for the purposes of adjudicating the instant motion accept all of Carone's allegations as true. As such, defendants' motion to dismiss Carone's intentional infliction of emotional distress claim against defendant Mascolo is **DENIED WITHOUT PREJUDICE to raising the issue in a motion for summary judgment.**

### III. CONCLUSION

The motion to dismiss **(dkt. # 12)** is **GRANTED in part and DENIED WITHOUT PREJUDICE in part**. Carone has failed to state a claim for intentional infliction of emotional distress against defendants Goodrich, Freund, and Petruny. Thus, to the extent defendants move to dismiss Carone's intentional infliction of emotional distress claims against Goodrich, Freund, and Petruny, their motion is **GRANTED**. With respect to defendant Mascolo, however, Carone has sufficiently pleaded a claim for intentional infliction of emotional distress under Connecticut law. Accordingly, defendants' motion to dismiss the intentional infliction of emotional distress claim against defendant Mascolo is **DENIED WITHOUT PREJUDICE** to raising the issue in a motion for summary judgment.

**IT IS SO ORDERED** at Hartford, Connecticut, this __14th__ day of August, 2007.

/s/DJS

**DOMINIC J. SQUATRITO**
**UNITED STATES DISTRICT JUDGE**